STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, SS                                    CIVIL ACTION
                                                  DOCKET NO.


RONALD THIBODEAU,                    )
                                     )
          Plaintiff                  )
                                     )
v.                                   )            **COMPLAINT**
                                     )            **JURY TRIAL REQUESTED**
MILLARD MALL SERVICES, INC.          )
AKA THE MILLARD GROUP,               )
                                     )
          Defendant                  )


Plaintiff Ronald Thibodeau, by and through the undersigned counsel, complains of

Defendant, Millard Mall Services, Inc., as follows:

## I.    INTRODUCTION

1.      This is an action for employment discrimination under the Maine Human Rights

Act, 5 M.R.S.A. §§ 4551 *et seq.* ("the Maine Act") and the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101 *et seq.* Defendant Millard Mall Services, Inc. ("Millard") is a

corporation that offers commercial facility cleaning services, including janitorial services, in

states across the continental United States, including Maine. Plaintiff Ronald Thibodeau

("Thibodeau") was at all relevant times an employee of Millard who worked as a janitor at the

Maine Mall in South Portland, Maine. Thibodeau was subjected to unlawful employment

discrimination by Millard, including discrimination, harassment, hostile work environment,

retaliation and termination, because of his disability.

## II.    JURISDICTION AND VENUE

2.      Jurisdiction properly lies in this Court pursuant to 5 M.R.S.A. §§ 4613(1), 2612.

1

3.     Venue properly lies in this Court pursuant to 15 M.R.S.A. § 501 based on Ronald Thibodeau's residence in the County of Cumberland, State of Maine.

4.     All preconditions to jurisdiction of the ADA and the Maine Act have been satisfied.

5.     Prior to filing this civil action, Thibodeau filed a timely charge of discrimination on the basis of disability with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

6.     The MHRC found reasonable grounds to believe discrimination occurred by Millard Mall Services, Inc. and the Commission failed, within 90 days after that finding to enter a conciliation agreement to which the individual plaintiff was a party.

7.     On May 4, 2016, the EEOC issued a letter to Thibodeau authorizing him to bring suit against Millard Mall Services, Inc.

### III.     PARTIES

#### Plaintiff Ronald Thibodeau

8.     Thibodeau is a citizen of the United States and a resident of the City of South Portland, County of Cumberland and State of Maine.

9.     Thibodeau is an individual with a disability within the meaning of the Maine Human Rights Act and the Americans with Disabilities Act.

10.     Thibodeau has a mental impairment, post-traumatic stress disorder. Due to his post-traumatic stress disorder, Thibodeau is substantially limited in major life activities including thinking, concentrating and interacting with others and is substantially limited in brain functions. Thibodeau's post-traumatic stress disorder constitutes an actual disability;  Millard Mall Services

2

regarded Thibodeau as disabled and Thibodeau has a record of disability, all pursuant to the Americans with Disabilities Act and the Maine Human Rights Act.

11.     Thibodeau has a physical impairment, encephalitis/severe allergy to bactrim. Due to his encephalitis/severe allergy to bactrim, Thibodeau is substantially limited in major life activities including thinking, interacting with others, standing and balancing and is substantially limited in major bodily functions including brain functions, functions of the immune system, and neurological functions. Thibodeau's encephalitis/severe allergy to bactrim constitutes an actual disability as defined by the Americans with Disabilities Act and the Maine Human Rights Act; Millard Mall Services regarded Thibodeau as disabled, and Thibodeau has a record of disability, all pursuant to the Americans with Disabilities Act and the Maine Human Rights Act..

12.     Thibodeau has a physical impairment, pulmonary embolism. Due to his pulmonary embolism, Thibodeau is substantially limited in major life activities including breathing, standing and balancing and is substantially limited in major bodily functions including circulatory and respiratory functions. Thibodeau's pulmonary embolism constitutes an actual disability; Millard Mall Services regarded Thibodeau as disabled and Thibodeau has a record of disability, all pursuant to the Americans with Disabilities Act and the Maine Human Rights Act.

13.     Thibodeau has a physical impairment, coronary pulmonary disorder (COPD). Due to his COPD, Thibodeau is substantially limited in major life activities including breathing and is substantially limited in major bodily functions including pulmonary and respiratory functions. Thibodeau's COPD constitutes an actual disability; Millard Mall Services regarded Thibodeau as disabled, and Thibodeau has a record of disability, all pursuant to the Americans with Disabilities Act and the Maine Human Rights Act.

3

14.     Thibodeau has worked all of his life and has a strong work ethic. Prior to his employment with Millard, Thibodeau served for twenty years in the United States Air Force, which he joined immediately following his graduation from high school. Following his honorable discharge from the Air Force, he worked in aviation, utilities and customer service. He came to Millard with prior experience working with cleaning agents and chemicals and supervising other workers.

15.     Thibodeau successfully completed training with Millard as a Janitor at the Maine Mall, including all required duties, paperwork, and proper handling of cleaning supplies and chemicals. He also passed a physical exam.

16.     At all relevant times, Thibodeau had the requisite skill, experience, education and other job related requirements and was able to and satisfactorily performed the essential job functions of Janitor with or without reasonable accommodation.

17.     From the time of his hire, Millard scheduled Thibodeau to work full time as a Janitor and gave him supervisory duties. As an employee of Millard, Thibodeau provided quality cleaning services, worked effectively as a supervisor and worked effectively independently and as part of a team.

18.     Thibodeau was a "qualified individual with a disability" within the meaning of the ADA and the Maine Human Rights Act.

### Defendant Millard Mall Services, Inc.

19.     Millard Mall Services, Inc. is a corporation with its principle place of business in Lincolnwood, Illinois.

20.     Millard offers commercial facility cleaning services, including janitorial services, in states across the continental United States, including Maine.

4

21.     Millard at all material times, owned and operated janitorial cleaning services provided at the Maine Mall, South Portland, Maine.

22.     Millard is a "person" within the meaning of the ADA 42 U.S.C.§ 12111(7).

23.     Millard is engaged in an "industry affecting commerce" within the meaning of the ADA. 42 U.S.C.§ 12111(7).

24.     Millard employed more than 15 employees for each working day in more than 20 weeks, during the preceding year.

25.     At all relevant times, Millard employed more than 3,500 employees.

26.     At all relevant times, Defendant Arnold Garza was employed as a manager by Millard Mall Services, Inc.

27.     Millard was an "employer" within the meaning of the ADA 42 U.S.C. § 12111(5)(A).

28.     Millard is a "covered entity" within the meaning of the ADA  42 U.S.C. § 12111(2).

29.     Millard is an "employer" within the meaning of the Maine Act. 5 MRSA § 4553(4).

30.     Millard is "person" within the meaning of the Maine Act. 5 MRSA § 4553(4).

31.     At all relevant times, Millard has employed employees whose usual place of employment is in the State of Maine. 5 MRSA § 4553(4).

## IV.   FACTS

32.     Millard hired Thibodeau around 2010 as a Janitor and Custodial Supervisor in the Food Court at the Maine Mall in South Portland, Maine.

33.     Soon after he was hired, Thibodeau informed his then-supervisor that he has post-traumatic stress disorder. He explained that he may need reasonable accommodation to take short breaks when his symptoms are exacerbated.  At that time, Millard permitted Thibodeau to go to a quiet space for typically a period of 5-6 minutes as a reasonable accommodation for his PTSD. This was an effective accommodation

34.     In the summer of 2013, Millard hired Arnold Garza as supervisor and manager at the Maine Mall.

35.     From the start, Garza made it known to Thibodeau that he was negative about Thibodeau's need for reasonable accommodation. For example, Garza repeatedly mumbled negative comments to Thibodeau regarding his reasonable accommodation for his PTSD.

36.     On or about September 20, 2013, Mr. Thibodeau was admitted to the hospital and diagnosed with encephalitis, pulmonary embolism; respiratory failure, and rash.  As a result of the encephalitis, Thibodeau went into a coma.  On or about September 27, 2013, Thibodeau was discharged to a rehabilitation facility.

37.     While at the rehabilitation facility, Thibodeau called Garza to keep him apprised of his health status. Garza told Thibodeau that he needed to know the exact date and time when he would be back at work and that Thibodeau's job depended on the information.

38.     A staff member at the rehabilitation facility overheard this conversation.  She called Respondent's Human Resources Department and explained Thibodeau's condition.  She helped Thibodeau request Family Medical Leave, which Millard approved.

39.     On or about October 7, 2013, the rehabilitation facility discharged Thibodeau to continue recovering at home. Garza then began calling Thibodeau at home to demand when he would be back at work.  Garza's tone was hostile and angry. When Mrs. Thibodeau answered the

phone, Garza demanded to speak with Thibodeau and told her to "get him up." Garza was so
hostile that he made Mrs. Thibodeau cry.

40.     On or around October 27, 2013, Thibodeau's doctor advised that he could begin a
gradual return to work, including starting back on a part-time basis (no more than 20 hours per
week) during weekend shifts. Thibodeau needed weekend shifts to accommodate his medical
appointments and treatments during this time.

41.     Garza told Thibodeau that his medical restrictions did not work for Garza. When
Thibodeau tried to again explain that he needed this accommodation for medical reasons, Garza
said "Why should I leave you as a supervisor, then, if you can't do the job?" Garza scheduled
Thibodeau to work 35 hours on weekdays even though Thibodeau;s doctor had only cleared him
to work 20 hours per week.

42.     A few days later, Thibodeau tried again to obtain a part-time schedule from
Garza. Thibodeau again explained that he still was recovering and that his doctor had only
approved him to work no more than 20 hours a week during weekend shifts. When Thibodeau
told Garza that he had brought a note from his doctor, Garza groaned and made a face. Garza
took the note and said "Well, what use are you anymore?" When the new schedule came out,
Thibodeau saw that Garza again had denied his request and had scheduled Plaintiff for 25-30
hours on days including Monday, Tuesday and Friday.

43.     Garza began to criticize Thibodeau frequently, even though Thibodeau worked
hard and performed his job satisfactorily. Garza was aware that Thibodeau had PTSD and
occasionally needed to have short breaks when he had panic attacks related to his PTSD. Garza
made offensive statements to Thibodeau about his disabilities. For example, Garza told
Thibodeau that his panic attacks from PTSD were "not real medical problems." Garza also began

7

to threaten Thibodeau regularly with demotions and pay reductions. On one occasion, Garza told Thibodeau that he was planning on getting rid of all the employees with disabilities once Christmas was over because he wanted to hire people who didn't have so many problems.

44.     On or about November 20, 2013, Thibodeau's doctor advised that he could go back to work full-time with reasonable accommodations of a slower work pace as he first returned to full-time hours and use of a cane if needed. When Thibodeau asked for these accommodations and gave the note to Garza, Garza became upset and told Thibodeau that he was not allowed to use a cane at work.  Garza told Thibodeau to use his cart for balance. Thibodeau called Millard's Human Resources department to ask for reconsideration of the denial of reasonable accommodation and to complain about the way Garza was treating him.

45.     Garza's negative attitude toward Thibodeau, including his repeated threats of adverse action and negative and angry affect toward him due to his disability, created a hostile and abusive work environment. Garza yelled at Thibodeau and said derogatory things to him on a daily basis.  Thibodeau's PTSD was exacerbated and he began experiencing increasing panic attacks and extreme anxiety due to Garza's actions.

46.     On or about November 29, 2013, Thibodeau went in to work at midnight for Black Friday. He began to have a panic attack and was unable to recover as he usually did. Thibodeau called Garza and told him he was having a panic attack and his medication was not working. He explained that he needed to go home. Garza ordered him to stay at the mall until someone from second shift showed up.

47.     Thibodeau called another employee who agreed to replace him.  In the meantime, he tried to recover in the break room. While he was in the break room, Garza came in and began slamming around and yelling and screaming at Thibodeau about his panic attack, calling him

8

"ignorant," "stupid," "totally goddamn worthless." Thibodeau told Garza that he was none of those things. In response, Garza stated, "Punch out and go home, because you are fired."

48.    Soon after his termination, Thibodeau informed Millard's Human Resources Office about the harassment and that he was terminated. Millard did nothing to rectify the way Thibodeau was treated and his termination.

## COUNT I – THE MAINE ACT
### FAILURE TO ACCOMMODATE

49.    Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

50.    It is unlawful discrimination under the Maine Human Rights Act for an employer to fail to make reasonable accommodation to the known mental and physical limitations of an otherwise qualified employee.

51.    Millard violated the Maine Act by failing to provide Thibodeau with reasonable accommodation.

52.    Millard acted intentionally, with malice, and with reckless indifference for Ronald Thibodeau's rights under the Maine Act.

## COUNT II – THE ADA
### FAILURE TO ACCOMMODATE

53.    Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

54.    It is unlawful discrimination under the ADA for an employer not to make reasonable accommodation to the known mental and physical limitations of an otherwise qualified employee.

9

55.     Millard violated the Maine Act by failing to provide Thibodeau with reasonable accommodation.

56.     Millard acted intentionally, with malice, and with reckless indifference for Ronald Thibodeau's rights under the ADA.

## COUNT III – THE MAINE ACT
### TERMINATION

57.     Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

58.     Millard violated the Maine Act by terminating Thibodeau because of his disability and need for reasonable accommodation..

59.     Millard violated the Maine Act by discriminating against Thibodeau based on his disability with respect to terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

60.     Millard acted intentionally, with malice, and with reckless indifference for Thibodeau's rights under the Maine Act.

## COUNT IV – THE ADA
### TERMINATION

61.     Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

62.     Millard violated the ADA by terminating Thibodeau because of his disability and need for reasonable accommodation.

10

63. Millard violated the ADA by discriminating against Thibodeau based on his disability with respect to terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

64. Millard acted intentionally, with malice, and with reckless indifference for Thibodeau's rights under the Maine Act.

## COUNT V – THE MAINE ACT
## HARASSMENT/HOSTILE WORK ENVIRONMENT

65. Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

66. Millard violated the Maine Act by subjecting Thibodeau to disability-based harassment and a hostile work environment under the Maine Act.

67. Millard violated the Maine Act by subjecting Thibodeau to unwelcome harassment, the harassment was because of his disability, and the harassment was so frequent and severe that it affected the terms, conditions, and privileges of his employment and created a hostile or offensive work environment.

68. Millard violated the Maine Act by discriminating against Thibodeau based on his disability with respect to hire, tenure, promotion, transfer, compensation terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

69. Millard acted intentionally, with malice, and with reckless indifference for Thibodeau's rights under the Maine Act.

## COUNT VI – THE ADA
## HARASSMENT/HOSTILE WORK ENVIRONMENT

70. Plaintiff realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

11

71.     Millard violated the ADA by subjecting Thibodeau to disability-based harassment and a hostile work environment under the ADA.

72.     Millard violated the ADA by subjecting Thibodeau to unwelcome harassment, the harassment was because of his disability and the harassment was so frequent and severe that it affected the terms, conditions, and privileges of his employment and created a hostile or offensive work environment.

73.     Millard violated the ADA by discriminating against Thibodeau based on his disability with respect to hire, tenure, promotion, transfer, compensation terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

74.     Millard acted intentionally, with malice, and with reckless indifference for Thibodeau's rights under the Maine Act.

## COUNT XIII – THE MAINE ACT
### RETALIATION

75.     Plaintiff realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

76.     Pursuant to the Maine Human Rights Act, it is unlawful for a person to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of the rights granted or protected by this Act or because that individual has exercised or enjoyed those rights.

77.     Millard violated the Maine Act by harassing and retaliating against Thibodeau.

78.     Millard violated the ADA by discriminating against Thibodeau based on his disability with respect to hire, tenure, promotion, transfer, compensation terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

12

79.     Millard acted intentionally, with malice, and with reckless indifference for Thibodeau' rights under the Maine Act.

## COUNT IX – THE ADA
### RETALIATION

80.     Plaintiff Ronald Thibodeau realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

81.     Pursuant to the ADA, it is unlawful for a person to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of the rights granted or protected by the ADA or because that individual has exercised or enjoyed those rights.

82.     Millard violated the ADA by harassing and retaliating against Thibodeau.

83.     Millard violated the ADA by discriminating against Thibodeau based on his disability with respect to hire, tenure, promotion, transfer, compensation terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

84.     Millard acted intentionally, with malice, and with reckless indifference for Thibodeau' rights under the Maine Act.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Ronald Thibodeau respectfully prays that this Court:

a.      Grant a permanent injunction enjoining Millard, its owners, officers, management personnel, employees, agents, successors, and assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of disability;

b.     Order Millard to institute and carry out policies, practices, trainings and programs that provide equal employment opportunities to qualified individuals with disabilities, and that eradicate the effects of past and present unlawful employment practices;

c.     Order Millard to make whole Thibodeau by providing him with appropriate lost earnings and benefits, with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and reasonable accommodations.

d.     Order Millard to make whole Thibodeau by providing compensation for pecuniary losses, including but not limited to costs to be incurred for health and life insurance premiums and costs of seeking new employment, in amounts to be determined at trial;

e.     Order Millard to make whole Thibodeau by providing compensation for nonpecuniary losses, including emotional pain, suffering, inconvenience, physical medical problems and mental anguish in amounts to be proved at trial;

f.     Order Millard to pay nominal damages.

g.     Order Millard to pay Thibodeau punitive damages in an amount to be determined at trial.

i.     Order Millard to pay attorneys' fees and costs of this action

k.     Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL REQUESTED

Ronald Thibodeau requests a jury trial.

Dated: 7/1/16

Kristin L. Aiello, Maine Bar No. 8071
Attorney for Ronald Thibodeau

14

Disability Rights Maine
24 Stone Street, Suite 204
Augusta, Maine 04330
(207) 626 2774 ext. 223
kaiello@drme.org

Dated: 7/1/16

_for Peter Rice_

Peter M. Rice, Maine Bar No. 7277
Attorney for Ronald Thibodeau
Disability Rights Maine
24 Stone Street, Suite 204
Augusta, Maine 04330
(207) 626 2774 ext. 223
pmrice@drme.org

Dated: 7/1/16

_for Jeffrey Young_

Jeffrey Neil Young, Maine Bar No. 3874
Attorney for Ronald Thibodeau
Johnson, Webbert & Young, LLP
P.O. Box 79, 160 Capitol St., Suite 3
Augusta, ME 04332
(207) 623 5110
JYoung@johnsonwebbert.com